EVA NOBLE CHARLES, Appellant, v. JACOB A. HART, Executor, et al., Appellees.

**WILLS: Conflicting Claims Under Devise and Oral Contract.** A devise will not be set aside in favor of a claimant to the same property under an alleged oral contract unless the evidence is very clear and convincing. Evidence held insufficient.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

MAY 3, 1921.

SUIT in equity to establish and confirm the plaintiff's alleged ownership of certain real and personal property. Trial to the court. Decree for the defendants, and plaintiff appeals.— *Affirmed.*

*Dawley & Jordan,* for appellant.

*E. A. Fordyce* and *Grimm, Wheeler, Elliott & Jay,* for appellees.

WEAVER, J.—I.    A statement of the family relationship of the parties and persons whose names figure in this controversy will aid in the clear understanding of the facts of the case. About the year 1885, one Olive P. Hart became the wife of Forest Noble. By a former marriage, Mrs. Noble had several children, among whom was the defendant herein, Jacob A. Hart (spoken of in the record as Dade Hart). About the year 1915, Olive P. (Hart) Noble died testate, dividing her entire estate in equal shares to her husband, Forest Noble, and her son Jacob. This will was admitted to probate. In October, 1918, Forest Noble, who was in the railway service, was accidentally killed, leaving neither wife nor living issue. He left a will, bearing date of February 25, 1915, which was admitted to probate. By the terms of this will he gave his entire estate in equal shares to his stepson, Jacob A. Hart, and Josephine, wife of Jacob. At the same time and place, and apparently as a part of the same transaction, Jacob A. Hart also executed a will in like form, giving his entire estate in equal shares to Josephine, his wife, and to his stepfather, Forest Noble. These instruments were executed at the same time, witnessed by the same persons, and deposited together in a bank safety box, to which both testators had access. On opening the safety box, after Noble's death, there were found therein, with the will, written notes or memoranda, as follows:

### Exhibit 1.

"Cedar Rapids, Iowa, Sept. 18. Dada: If anything happens to me, give the Chalmers to Bob Smith after you are through using it here. F. A. Noble."

### Exhibit 3.

"Aug. 3rd. To My Legal Representative, Dade Hart: Pay out of my insurance

"To Maude Charles Bunger ...............$500.00
"To Martha Roy Charles ·................ 500.00
"To Marie Hancock, my niece.............. 500.00
"To Josephine Hart, stepdaughter .......... 500.00

"All other moneys I may have go to Dade Hart.

"Forest A. Noble."

Exhibit 4.

"Sept. 18. Dear Dada: If I should get killed by accident there will be life insurance to about $6,000. If it should happen please give Mrs. Charles One Thousand in addition to my One Thousand I have set aside for her out of my O. R. C. insurance.

"Forest.

"P. S. There will be something coming to you from the Railroad.

"Forest."

The plaintiff, Eva Charles, is the sister of Forest Noble, deceased.

Returning now to the origin and nature of the claim asserted by the plaintiff, it appears that she became a widow a short time prior to the death of the wife of her brother Forest, and, at the time of the decease of her sister-in-law, she was in Cedar Rapids, upon some business errand connected with the estate of her late husband. Pursuant to some agreement or understanding between the brother and sister, the latter thereafter made her home in a house on a part of the real estate devised by Olive P. Noble to her husband, Forest, and her son Jacob. This house, as we understand the record, had been the home of Olive in her lifetime, and the furniture and household equipment were such as she left therein. It should be said that both Forest Noble and his stepson were railroad men, and, for a considerable portion of the time, they were employed on roads in a distant state, and their actual presence in Cedar Rapids was not constant. During the remainder of the life of Forest, his sister lived in his house and kept and cared for his home, a period of perhaps three years. In his vacation from active employment, Noble returned home, where he and his sister lived together. The relations between brother and sister appear to have been harmonious. After Noble's death, Hart, as executor of his will, went to Noble's late home and made an inventory of his estate, listing therein the undivided half of substantially all of the property now in controversy. The plaintiff was present, and at that time asserted no claim of right or title

to such property or estate. At about the same time, Hart suggested to plaintiff that the house was sufficient to afford room both for herself and for Hart and his wife, but plaintiff refused to accede to such arrangement. Soon afterward, she asserted a claim of ownership to all the estate, real and personal, of which Forest Noble died seized or possessed, on the alleged ground that she entered the home of her brother under an oral contract, by which, in consideration of her taking charge of and keeping his home, he would keep and care for her during her life; and that, to insure the performance of such agreement on his part, in the event that she outlived him, he promised to make a will, giving her all his property of every kind. It is to enforce this alleged contract and confirm her title to said estate that this suit has been instituted. It should, perhaps, be said that the plaintiff first filed a claim against the estate of her brother for $25,000 damages because of the failure of the deceased to perform the alleged contract; but, by agreement of the parties, the proceedings were transferred to the equity calendar for trial on pleadings thereafter framed. Proper objections were made to the competency of witnesses; but, following the prevailing practice, the answers of such witnesses were taken and preserved in the record, subject to the court's final ruling when the testimony was all in.

We cannot undertake any review of the evidence in detail. When we eliminate from our consideration, as we must, the testimony of the plaintiff as a witness to alleged personal dealings, communications, and transactions between herself and her brother, the case made by her does not appeal strongly to one's confidence. The corroboration on which she relies is, for the most part, supplied by her children and interested relatives, who repeat alleged statements or admissions by Forest Noble in his lifetime. While such testimony is, for the most part, competent, it is still to be said that evidence from interested or biased sources, of statements and admissions by one whose mouth is closed by death, is to be scanned with caution, and ordinarily lacks persuasive force, unless the alleged admissions are consistent with the proved attitude and conduct of the deceased in his lifetime. Now, in so far as we have any aid to be derived from Forest Noble's own undisputed words and acts,

they tend to discredit the plaintiff's claim. So far as appears, there is nothing in the record to suggest the thought that he sought to mislead or deceive his sister, or that, while encouraging her to understand that she was to be the beneficiary of his entire estate, he was perfecting a plan to deprive her of it. All, or substantially all, of the property he possessed was such as he had derived from his deceased wife, the mother of Hart, and it was not an unnatural or discreditable thought on his part to provide that, on his death, the bulk of it should go back to her son. His will to that effect had been duly executed, was carefully preserved until his death, and not only was never revoked, but its existence was, from time to time, impliedly recognized by him in the written memoranda directed to his executor and deposited with the will.

It also appears that, in a letter written by him to Hart but a few days before his death, replying to something Hart had said about their property matters, he said:

"Your letter was all right, only about the little house for Mrs. Charles. She has two houses of her own. Don't need any more. All the stuff I have will be for you and yours and myself as long as I live."

If an honest man, he would hardly have indulged in this statement when he was under contract to leave all his property to his sister. Still again, in the last memorandum deposited with the will, apparently near the end of his life, he directs the payment to her of $1,000 from certain insurance; and, in addition to this, he had already named her as his beneficiary in other insurance to the extent of another $1,000. These things are inconsistent with any thought on his part that he had given or promised to give her all his estate. It does not appear that plaintiff was in needy circumstances, giving her any special claim upon the deceased, other than such as would evidence his brotherly affection. It is true that she had kept his house and home open for his use on his occasional returns to Cedar Rapids, but he had, in turn, furnished her a home, and, as we understand it, paid their common living expenses. She also had at least some property and estate of her own. It is difficult to avoid the impression from the record that, during his later years, Noble realized, or at least feared, that his lease of life was pre--

carious, and was quietly arranging his worldly affairs to meet the call when it should come. The making of his will, the succeeding memoranda thereafter made for the use of his executor, the tone of his letter, to which reference has been made, and different expressions attributed to him by several witnesses, are at least proof that he recognized the possibility of his demise, and appreciated the wisdom of preparation for the inevitable. Had he agreed to give his whole estate to plaintiff, or had he any such disposition of his property in contemplation, it seems quite impossible, or at least exceedingly improbable, that he should not have given it expression by a new will, or by codicil to the will he had already made, or by some other unequivocal act on his part. The written evidence of the manner in which he wished to distribute his estate exists; it has been proved and admitted to probate; there is no claim or proof that the instrument is void for incompetency of the testator or is the product of a mind swayed by undue influence. To justify the court in disregarding the devise to the defendants, in favor of a claimant under an alleged oral contract of which there is not a single competent eyewitness or earwitness, requires a peculiarly strong array of evidence, a situation which this record does not disclose. We think the trial court did not err in holding that plaintiff's claim had not been established.

II. Appellant makes special claim to the ownership of a certain automobile listed in the inventory of property of the estate of Forest Noble. The car appears to have been purchased by Noble; and that he did not understand that he had given it to his sister is shown by the fact that, in his memorandum deposited with the will, he directs his executor to give the car to his friend Bob Smith. This is, of course, not conclusive, but the testimony in support of plaintiff's claim is, for the most part, that Noble said to several persons that the car belonged to Eva. It was also shown that she cared for it and washed it and claimed it as her own. On the whole, however, the evidence is insufficient to overcome the presumption that it belonged to the man who purchased it, and we are not disposed to interfere with the finding of the trial court.

III. Appellant claims that the judge presiding at the trial frequently interrupted the orderly course of the trial by taking

the examination or cross-examination of witnesses into its own hands. That the court did pursue this course repeatedly must be admitted; and, were the case being tried to a jury, it would be difficult to avoid the conclusion that appellant might have suffered prejudice therefrom. We are satisfied, however, with the fairness of purpose on part of the distinguished judge, as well as with the correctness of his conclusion upon the equities of the case, and the error, if any, in respect to the matter complained of was nonprejudicial.

IV. There is some question raised by appellee as to whether the appeal in this case was taken in time to entitle appellant to a review of anything more than the trial court's ruling on a motion for new trial; but, having examined the entire record, we are disposed to solve the doubt in appellant's favor, and dispose of the appeal on the merits of the case.

Of the court's rulings on the motion for new trial and motion for leave to file a new or amended pleading to conform the issues to the evidence offered, we think they were within the court's discretion, and we find nothing therein to justify a reversal of the decree below. The decree appealed from is— *Affirmed.*

EVANS, C. J., PRESTON and DE GRAFF, JJ., concur.